*145
 
 ROGERS, J.
 

 The A. & J., Incorporated, is the owner of a three-story building situated at the corner of Louisiana avenue and Milam street in the city of Shreveport. On the morning of January 12, 1930, the building was almost completely destroyed by an explosion which occurred in the basement; resulting in a suit for damages by the A. & J., Incorporated, against the Southern Cities Distributing Company, the owner of a franchise for distributing gas in Shreveport. The district court nonsuited plaintiff, and, on appeal, this court affirmed the judgment. See A. & J., Inc., v. Southern Cities Distributing Co., 173 La. 1051, 139 So. 477.
 

 Pending the final decision in that case, several suits for damages for personal injuries growing out of the explosion were brought against the same defendant. The first of these cases reaching final decision was Koch v. Southern Cities Distributing Company, and the A. & J., Inc., 18 La. App. 664, 138 So. 178, wherein the Court of Appeal, Second Circuit, affirmed the judgment of the district court holding the Southern Cities Distributing Company liable in damages and relieving the A. & J., Incorporated, from all responsibility for the accident. A writ of review in the case was denied by this court.
 

 A companion suit to the Koch Case was that of Malloy v. Southern Cities Distributing Company (La. App.) 142 So. 718, wherein the distributing company was also held liable in damages for personal injuries caused by the explosion.
 

 After the decision in the suit reported in the 173 Louisiana Report became final, plaintiff brought the present suit, in which, under the petition and the answer, the issues are identical with those in the former suit. Additional testimony was adduced, and the case was submitted on that testimony, together with the testimony adduced in the previous case, and with the right of the judge of the district court to consider all the evidence in the Koch Case; resulting in a judgment in plaintiff’s favor 'for $11,523.55, with interest and costs. Erom this judgment defendant appealed.
 

 The explosion could have occurred only through one of two causes, namely, the accumulation of natural gas in the basement, or the accumulation of sewer gas in the basement.
 

 Defendant was serving plaintiff’s building with natural gas, and, after reviewing the facts in the former case, we reached the conclusion that the explosion was due to the presence of natural gas, and not to the presence of sewer gas, in the basement of the building. The reading of the evidence in this case has not caused us to change our opinion in that respect.
 

 In our examination of the record on the former appeal, we were not satisfied, from the testimony, as to whether the connection of the service pipe line with the gas main was properly made originally; tliat the escaping gas from the street main could penetrate a brick wall in front on plaintiff’s building apparently extending below the service to the point which would have rendered it difficult for the gas to enter the basement; that the gas had entered plaintiff’s building through the subsoil beneath the sidewalk rather than had escaped through the curb
 
 *147
 
 cock; and that there were no shut-off valves or other apparatus by which gas might have been turned on in the basement through the house connections.
 

 The additional testimony adduced in this case has clarified the doubtful issues of fact presented in the former case.
 

 All the damage suits growing out of the explosion were tried in the district court before the same judge. And the Koch and Malloy Cases were reviewed by different sections-of the Court of Appeal. In both those cases the preponderance of the evidence was found to show that the explosion was caused by the negligence of the distributing company and it was held liable to the respective plaintiffs for their resulting injuries. The situation in this case is not materially different from the situation in those cases.
 

 Both sections of the Court of Appeal elaborately discussed the appropriate facts in the Koch and Malloy Cases, and we do not deem it necessary to discuss them here, except on a few points that are particularly applicable to this case, in view of our decisioh in the former case.
 

 The preponderance of the testimony is that the connection between the service pipe and the defendant’s street main was not properly installed. Defendant’s gas main was laid parallel to plaintiff’s building on the opposite side of the street, about six feet from the curb. In order to connect the service line with the main without digging up the pavement, the sidewalk in front of plaintiff’s building was excavated to the wall, and the two-inch service pipe, cut into sections six feet in length, was placed in the excavation and jacked or forced across the street beneath the pavement. The jack was braced 'against the wall or a concrete pier of plaintiff’s building. Each section of pipe was attached to the service line as it disappeared from view. The service line reached the point desixed somewhat lower than the street main, which necessitated the pulling up of the service connection, resulting in its installation on a strain. This strain, which doubtless continued with cumulative effect from the time the installation was completed until the moment the break at the connection occurred, in all probability contributed to the disconnection resulting in the leak that caused the accident.
 

 On the trial of this case, defendant, as it did in the Malloy Case, offered some testimony to show the effect of hammering on a pipe similar to the pipe used by defendant for its main and connections at the time of the explosion. This testimony showed in this case, as well as in the Malloy Case, that there was no. rupture of the threads of the tee. The service line to plaintiff’s building was connected to a service tee attached to defendant’s street main at a point opposite plaintiff’s building. But this testimony also showed, as it did not show in the Malloy Case, that the haxnmering broke the threads in the gas main itself.
 

 The additional testimony adduced in this case makes plain that which was obscure in the former case in considering the reasonableness of plaintiff’s theory that escaping gas from the street main entered plaintiff’s building through the subsoil beneath the sidewalk notwithstandixxg the existence of the brick wall of the basement.
 
 *149
 
 The uncontradicted testimony in this record is that no such wall was in existence at the time of the explosion. That the wall on the Louisiana avenue side of the building was supported by a concrete beam, which, in turn, was supported by concrete columns. That when the building was remodeled about a year before the explosion, the brick wall on the Louisiana side of the basement was entirely x-emoved between the columns supporting the beam, and that the service line entered plaintiff’s building between these columns, which wei’e about nineteen feet apart.
 

 The testimony in this case also makes plain the improbability that gas in any appreciable quantity escaped from under the street through the curb box. In the former ease, the testimony showed that the top of the curb box was locked, that it was covered with dirt and trash, and that it had experienced the rigors of a long and hai’d winter of snow and ice. The testimony in this casé showed additionally that the curb-box top was quite heavy and that it was screwed in. And that it could only have been removed by a skilled plumber with the aid of an instrument. Thus negativing the probability of the top of the curb box being lifted by the low-pressure gas escaping through the main.
 

 The evidence in the former case as well as in this case discloses that all the house pipes were in good condition. But in the former case no showing was made to negative the possibility of gas having been turned on in the basement and thus permitted to escape. The doubt in the matter has been dispelled in this case. Here the testimony expressly shows that there are no vents, outlets, cocks, or any other means through which gas could have been taken from the pipe beneath the building. No meter was in the basement. All the meters were on the first floor. There were no plugs or keys to any service line underneath the building. The gas could only reach the meters on the first floor by going through the basement.
 

 Our conclusion is that the natural gas which exploded in plaintiff’s building belonged to the defendant, and that it escaped where the service line connected with defendant’s street main as the direct result of defendant’s negligence in failing to properly install the service tee in its main. That the escaping gas found its way, either through the old, dead service line, or, which is more probable, through the loose and porous earth full of crevices, resulting from two excavations made in the sidewalk when natural gas was introduced into the building about eighteen months before, and the forcing of the service line under the pavement. That the escaping gas was excluded from the surface by the concrete and asphalt sidewalk and street pavement and the tightly fitting curb box, and that there was no way for it to go except through the more or less loose earth and the fissures therein between the concrete piers into the basement of plaintiff’s building.
 

 The law governing the case is fully discussed by the Court of Appeal in the Koch Case, and it is not necessary for us to discuss it here.'
 

 Defendant does not question the correctness of the amount awarded to plaintiff by the court below.
 

 For the reasons assigned, the judgment appealed from is affirmed.